# ORIGINAL

# In the United States Court of Federal Claims

(Pro Se)
No. 17-699C
Filed: July 31, 2018

|  |  |
|---|---|
| MCCLENDON N. WATERS, III,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Keywords: Military Records Correction;
Voluntary Retirement; SECNAVINST
1920.6C; Board of Inquiry; Non-Judicial
Punishment; BCNR; Retirement Grade;
Retirement Pay.

**FILED**

**JUL 3 1 2018**

U.S. COURT OF
FEDERAL CLAIMS

*McClendon N. Waters, III*, Tampa, FL, Plaintiff pro se.

*Veronica N. Onyema*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with whom were *Tara K. Hogan*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General, for Defendant. *Lt. Cmdr. Adam E. Inch*, U.S. Navy Office of the Judge Advocate General, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge.**

Pro se plaintiff McClendon N. Waters, III is a retired officer of the United States Marine Corps. During Mr. Waters's service, a Marine Corps investigation determined that he had engaged in an inappropriate relationship with the wife of a service member under his command. As a result, the Marine Corps imposed non-judicial punishment for conduct unbecoming an officer and a gentleman. It then began separate proceedings to determine whether Mr. Waters should remain a Marine. Mr. Waters chose to voluntarily request retirement rather than go through those proceedings. The Secretary of the Navy granted Mr. Waters's request, but retired him at the lesser grade of major, rather than at the rank of lieutenant colonel, which he then held.

A few years later, Mr. Waters challenged the Secretary's decision to retire him at a lesser grade before the Board for Correction of Naval Records. The Board rejected his claims and Mr. Waters filed suit here. He asserts that the Marine Corps failed to follow the applicable Navy instruction for processing his retirement request and that he should have been retired as a lieutenant colonel. Consequently, he alleges that the Board erred in failing to correct his records.

The matter is now before the Court on the government's motion to dismiss for failure to state a claim, its alternative motion for judgment on the administrative record, and Mr. Waters's

7012 3460 0001 7791 7890

cross-motion for judgment on the administrative record. For the reasons set forth below, the Court finds that the military retirement statutes provide it with jurisdiction over Mr. Waters's claims. To the extent that Mr. Waters is also pressing claims under the Military Pay Act, the Court agrees with the government that those claims must be dismissed in light of his voluntary decision to retire. Finally, it holds that on the merits of Mr. Waters's claims under the retirement statutes, the Board's decision was not arbitrary or capricious or contrary to law.

## BACKGROUND

I.      **Mr. Waters's Service in the Marine Corps**

Mr. Waters enlisted in the United States Marine Corps in 1984. Admin. R. (AR) Tab 1 at 3; see also id. at 40. During his service, his primary specialty was as an intelligence officer. Id. at 68. In 2008, Mr. Waters, then a lieutenant colonel, was selected to command the Marine Cryptologic Support Battalion. Id. at 115.

In 2010, while Mr. Waters was the commanding officer of that battalion, the Marine Corps received an allegation that he "was involved in an inappropriate personal relationship" with the wife of a Marine Corps gunnery sergeant, and that Mr. Waters was also married at the time. See id. Tab 4 at 420. As a result of the allegation, the Marine Corps relieved Mr. Waters of command on September 3, 2010. Id. Tab 1 at 117. It also began an investigation into the allegations of misconduct. Id. Tab 4 at 419–25.

The investigating officer substantiated the allegation made against Mr. Waters in a report issued later that month. Specifically, he concluded that while Mr. Waters "was married," he "engaged in and maintained a relationship of [a] []sexual nature with" the wife of a Marine Corps gunnery sergeant. Id. at 424. The investigating officer based his conclusions upon, among other things, statements from the individuals involved, a review of the service histories of both Mr. Waters and the gunnery sergeant, and transcripts of online conversations. See id. at 419–24. He recommended that Mr. Waters be charged with a violation of the Uniform Code of Military Justice (UCMJ), Article 133, entitled Conduct Unbecoming an Officer and a Gentleman. Id. at 425. The investigating officer recommended that the charge be based upon his finding that "between December 2008 and the present time, while married, [Mr. Waters] established and maintained an in appropriate [sic] relationship of [a] []sexual nature with a woman other than his wife and a woman that he knew to be married," and did so "as an enlisted Marine." Id.[1]

---

[1] The investigating officer concluded that there was insufficient evidence to prove adultery pursuant to the General Article, Article 134, of the UCMJ. AR Tab 4 at 424. According to the Manual for Courts-Martial, a charge of adultery under Article 134 has three elements: 1) "[t]hat the accused wrongfully had sexual intercourse with a certain person"; 2) "[t]hat, at the time, the accused or the other person was married to someone else"; and 3) "[t]hat, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces." Manual for Courts-Martial United States ¶ 62(b) (2016), https://jsc.defense.gov/Portals/99/Documents/MCM2016.pdf?ver=2016-12-08.

## II.    Non-Judicial Punishment and Referral to Board of Inquiry

On October 5, 2010, the commanding officer of the Marine Corps Intelligence Activity, Colonel Dimitri Henry, endorsed the investigative report and "recommend[ed] approval of the findings of fact, opinions, and recommendation of the investigating officer." Id. at 418. The commander of Marine Corps Base Quantico then gave his endorsement on October 7, 2010. Id. at 417. On October 14, 2010, the commanding general of the Marine Corps Combat Development Command, George J. Flynn, provided a third endorsement. Id. at 416. Lieutenant General Flynn stated that he "approve[d] the recommendation that Lieutenant Colonel Waters be subject of nonjudicial punishment" and that he would "provide notification of nonjudicial punishment under separate cover." Id. at 416. He did so that same day. See id. Tab 1 at 117.[2]

On November 15, 2010, Lieutenant General Flynn convened a hearing to consider non-judicial punishment of Mr. Waters based upon the conduct set out in the investigator's report. Id. Tab 5 at 432–37. He advised Mr. Waters that he was:

> [C]harged with committing . . . [v]iolation of the [UCMJ], Article 133, conduct unbecoming an officer and a gentleman; in that you, a married man on active duty as the Commanding Officer of [the] Marine Cryptologic Support Battalion, did on diverse occasions at various locations from August 2008 through September 2010 wrongfully engage in an inappropriate relationship with . . . a married woman, the wife of a Marine Corp Gunnery Sergeant, that was unduly familiar, personal, romantic, [and] sexual.

Id. at 433.

Mr. Waters stated that he understood the charge. Id. He also confirmed that he understood his legal rights, including the right to be advised by counsel. See id. at 434; see also id. at 428. Mr. Waters did not offer any evidence at the hearing. When asked if he was "admitting that [he] did it," Mr. Waters stated that he took "responsibility for [his] actions." Id. at 434. Lieutenant General Flynn clarified by asking Mr. Waters whether he "admit[ted] that [his] conduct was unbecoming an officer and a gentleman, and that [he] had an inappropriate relationship with [the] wife of a Gunnery Sergeant who was [his] subordinate." Id. at 435. Mr. Waters responded "[y]es, sir." Id.

---

[2] Non-judicial punishment is one of a number of options available to military authorities to address offenses committed by service members. Dumas v. United States, 620 F.2d 247, 250–53 (Ct. Cl. 1980). Set out in Article 15 of the UCMJ, the non-judicial punishment process is the least formal option and is conducted by an accused's commanding officer. Id. at 251. The proceeding is not criminal in nature and no formal evidentiary standards apply. Id. An accused service member may present evidence to his commanding officer. Id. If the commanding officer is convinced that the service member committed the offense, he may impose certain limited punishments, including forfeiture of pay. Id. at 251–52. An accused service member has the right to elect to proceed instead with a formal court martial. Id. at 251; see also 10 U.S.C. § 815.

As a result, Lieutenant General Flynn imposed non-judicial punishment in the form of a letter of reprimand and the forfeiture of a portion of Mr. Waters's pay for two months. Id. He then informed Mr. Waters of his appeal rights and ended the hearing. Id. at 436. Mr. Waters did not appeal the imposition of non-judicial punishment.

On November 24, 2010, Lieutenant General Flynn prepared a report on the matter for the Commandant of the Marine Corps. Id. at 427–28. In it, Lieutenant General Flynn stated that "this incident has provided evidence of poor decision-making and a complete failure of leadership." Id. at 428. He opined that "a married Marine officer who engages in a sexual relationship with an enlisted Marine's wife is appalling." Id. Accordingly, Lieutenant General Flynn wrote that he had "determined that Lieutenant Colonel Waters['s] knowing and willful disregard for the oath of office should bar him from continued service as a Marine officer," and that "as the designated show cause authority for the Marine Corps, [he would] direct that Lieutenant Colonel Waters be required to show cause for retention in the Marine Corps at a Board of Inquiry." Id.[3]

## III.    Mr. Waters's Request to Retire

On November 24, 2010, the same day that Lieutenant General Flynn prepared his report, he sent a "Notification of Board of Inquiry" to Mr. Waters. Id. Tab 1 at 140. The notice stated that "a Board of Inquiry will be convened to make a recommendation on [Mr. Waters's] retention in the U.S. Marine Corps" based upon his conduct and the non-judicial punishment. Id. It continued that "[t]he specific reasons for separation to be considered by the Board [are] misconduct and moral or professional dereliction of duty, as evidenced by commission of a military or civilian offense which could be punished by confinement of 6 months or more." Id. The notice also informed Mr. Waters that as "a retirement-eligible officer, if [his] retirement [was] recommended, the Board [would] also recommend whether [he] should be retired in the current grade or a lesser grade." Id. at 140–41. That decision, however, ultimately "rest[ed] with the Secretary of the Navy." Id. at 141. Finally, the notice informed Mr. Waters that he would be provided the opportunity to prepare and present a case to the Board of Inquiry. See id.

Sometime shortly thereafter, Mr. Waters inquired, through counsel, concerning the procedures that would apply if he chose to voluntarily retire rather than proceeding before the Board of Inquiry. See id. Tab 14 at 934–35. On November 29, 2010, a colonel in the Staff Judge Advocate's office of the Marine Corps Combat Development Command responded by directing Mr. Waters to "paragraph 2.c. of enclosure (6) of SECNAVINST 1920.6C." Id. at 934. He advised that the cited section "would indicate that [Mr. Waters] gets an opportunity for a rebuttal if [the commanding general] adds any new factual material" in his recommendation to the

---

[3] If a service member's performance falls below duty standards, the Secretary of the Navy may require that service member to show cause before a Board of Inquiry as to why he or she should be retained on active duty. See 10 U.S.C. § 1181(a). A Board of Inquiry "receive[s] evidence and make[s] findings and recommendations as to whether an officer . . . should be retained on active duty." Id. § 1182(a). The Secretary of the Navy is then permitted to remove an officer from active duty if the board so recommends. Id. § 1184. Alternatively, "[a]t any time during proceedings . . . with respect to the removal of an officer from active duty," an officer, if otherwise qualified, may request voluntary retirement. Id. § 1186(a).

Secretary regarding the grade at which Mr. Waters would be retired. Id. at 934–35. He cautioned, however, that Mr. Waters would not get an opportunity to rebut any recommendation that was based solely on the material of record. Id. at 935. The colonel also advised that the Marine Corps "has included comments submitted by a respondent to an endorsement in the past," but that there was "no right to do so." Id.

On December 21, 2010, Mr. Waters wrote to the Assistant Secretary of the Navy for Manpower and Reserve Affairs, stating that he was submitting a "voluntary request to retire in lieu of further processing for administrative separation for cause." Id. Tab 8 at 446. He stated that he "underst[oo]d that a board of inquiry [would] not be convened to recommend [his] retirement grade to the Secretary of the Navy," that his "request [was] purely voluntary," and that "once submitted, [it could] only be withdrawn with the permission of the Secretary of the Navy." Id. Mr. Waters also acknowledged that the Secretary "has the plenary authority to determine the last grade in which [he] served satisfactorily, and may determine that [he] retire in a lesser pay grade" than the one he held at that time. Id. at 447. Further, Mr. Waters again admitted to engaging in the affair with the gunnery sergeant's wife. See id. Finally, Mr. Waters noted that his request was "made in consultation with Mr. Greg Rinckey, ESQ, and Mr. Yancey Ellis, ESQ," as well as "Major Yong Lee, USMC, Senior Defense Counsel." Id.

The commander of Marine Corps Base Quantico endorsed Mr. Waters's retirement request on January 3, 2011, and forwarded it to Lieutenant General Flynn. Id. at 444–45. In a January 13, 2011 endorsement, Lieutenant General Flynn summarized that "an investigating officer [had] investigate[d] allegations of an inappropriate personal relationship between Lieutenant Colonel Waters . . . and the wife of a gunnery sergeant within his command" and that the "investigating officer opined that Lieutenant Colonel Waters was involved in an adulterous relationship." Id. at 444. Lieutenant General Flynn recommended approval of Mr. Waters's retirement request, but at the rank of major, not lieutenant colonel, concluding that the former was the "the last rank [Mr. Waters] satisfactorily held." Id.

On March 1, 2011, the Deputy Commandant of the Marine Corps for Manpower and Reserve Affairs issued a third endorsement. Id. Tab 7 at 441. He also summarized the prior proceedings and Mr. Waters's conduct. Id. at 441–42. The deputy commandant similarly recommended that Mr. Waters "be retired in the lesser grade of major." Id. at 442. Mr. Waters's retirement request and all three endorsements were then forwarded to the Office of the Secretary of the Navy for decision. See id. Tab 14 at 918–20.

On April 4, 2011, the Assistant Secretary of the Navy for Manpower and Reserve Affairs approved the recommendations contained in the endorsements and stated that "Lieutenant Colonel Waters is voluntarily retired in the lesser grade of major." Id. Tab 7 at 443. Mr. Waters was notified via email two days later. Id. Tab 14 at 767–68. His separation was to become effective May 31, 2011. See id. Tab 1 at 68.

On May 30, 2011, at 1:45pm, Mr. Waters emailed the Department of the Navy's Office of General Counsel. Id. Tab 14 at 779. He stated that he had "reason to believe" his case had been "mishandled at multiple levels" and that he "intend[ed] to address potential procedural defects via the Board of Corrections for Naval Records." Id. at 780. Mr. Waters also informed the Navy's Office of General Counsel that he had recently received new information that

"raise[d] deep concerns of possible prejudicial activity and unlawful command influence by individuals responsible for handling and disposing of [his] case." Id. He noted that he had originally sent notice of these concerns to the Marine Corps's inspector general, but now understood "that only the separation authority [i.e., the Secretary of the Navy] has the power to take action." Id. Mr. Waters thus requested "an emergency delay in [his] retirement until [he could] formally present grievances to SECNAV." Id.

The Navy did not take any immediate action in response to Mr. Waters's May 30, 2011 email and his retirement became effective as scheduled. See id. at 777–79. Mr. Waters was thus separated from the Marine Corps on May 31, 2011. Id. Tab 9 at 485.[4]

## IV.    Proceedings Before the Board for Correction of Naval Records

On May 29, 2014, Mr. Waters submitted an application for correction of his military records to the Board for Correction of Naval Records (BCNR or Board). Id. Tab 13 at 501. He asserted error based on "[u]nlawful command influence & prejudicial activity within chain of command"; "unfounded chain of command endorsement"; and "[n]oncompliance with SECNAVINST 1920.6C" through "failure of notification and right to review upon new material added by government." Id. Mr. Waters did not seek reinstatement; instead, he sought to have his records changed to reflect retirement as a lieutenant colonel. Id. He also sought the removal of "derogatory language" from his service record. Id.

In the supporting documents Mr. Waters submitted with his application, he alleged that the Marine Corps failed to comply with enclosure six to SECNAVINST 1920.6C. Id. at 532. That instruction sets forth certain procedures the Marine Corps must follow in handling voluntary requests for retirement. See Def.'s Mot. to Dismiss, Alternative Mot. for J. on the Admin. R., and Opp'n to Pl.'s Mot. to Suppl. the Admin. R. (Def.'s Mot.) Ex. A, Docket No. 22. According to Mr. Waters, the Marine Corps violated the instruction when it did not notify him in advance that his retirement request was being submitted to the Secretary of the Navy, did not give him an opportunity to review the package that went to the Secretary, and did not provide him an opportunity to rebut what he characterized as new factual material that Lieutenant General Flynn had provided. AR Tab 13 at 532–41. He also asserted that the Marine Corps failed to consider the required factors set out in the instruction for determining satisfactory service in the grade currently held. Id. at 543.

Mr. Waters further asserted, among other things, that the command investigation into his conduct was "tainted by crime, prejudicial activity & unlawful command influence." Id. at 553–54 (capitalization altered). He also challenged as improper the conduct of certain superior officers during the investigation and highlighted alleged discrepancies in the investigation report. Id. at 557–65.

---

[4] It appears that in June 2011, Mr. Waters's inquiry to the Navy's Office of General Counsel was referred back to the Marine Corps. See AR Tab 14 at 777. The record does not indicate what, if anything, the Marine Corps did in response.

Over a year later, on July 14, 2015, and after Mr. Waters wrote to the BCNR regarding the status of his case, the Board requested an advisory opinion from the Commandant of the Marine Corps regarding the validity of Mr. Waters's allegations and whether his record should be corrected to reflect retirement at the grade of lieutenant colonel. Id. Tab 10 at 488. On August 4, 2015, the head of the Marine Corps's Military Personnel Law Branch, Lieutenant Colonel S.D. Schrock, responded, recommending that the BCNR deny Mr. Waters's request. Id. Tab 15 at 977–83. Lieutenant Colonel Schrock noted that Mr. Waters had accepted non-judicial punishment without appeal and admitted that he engaged in the conduct charged. Id. at 981. He then opined that Mr. Waters had misinterpreted the procedural requirements of SECNAVINST 1920.6C by relying upon provisions that were applicable "to voluntary retirement requests from 'officers who have been the subject of any substantiated adverse finding or conclusion from an officially documented investigation or inquiry,'" as opposed to provisions applicable to those, like himself, who were "being considered for administrative show cause proceedings." Id. at 982 (quoting Enclosure 6 to SECNAVINST 1920.6C).[5]

Further, Lieutenant Colonel Schrock observed that even under the applicable portion of the instruction, Lieutenant General Flynn's endorsement did not trigger any further procedural protections for Mr. Waters because Lieutenant General Flynn had not, in fact, added any new factual material in his endorsement. Thus, he asserted that Lieutenant General Flynn's use of the word "adulterous" "reflect[ed] the common, rather than legal, usage of the word," and therefore did not constitute new factual material. See id. at 982–83. He similarly rejected Mr. Waters's challenge to Lieutenant General Flynn's characterization of the gunnery sergeant as being "within his command" because the record reflected that the gunnery sergeant was Mr. Waters's subordinate. Id. at 983.

On November 30, 2015, the BCNR issued its decision, finding "the evidence submitted was insufficient to establish the existence of probable material error or injustice." Id. Tab 3 at 394. It observed that Mr. Waters had neither demanded trial by court martial with respect to the charges against him nor appealed the imposition of non-judicial punishment. Id. at 395. The Board also highlighted that Mr. Waters voluntarily submitted his retirement request and acknowledged that the Secretary of the Navy had plenary authority to determine the last grade in which he satisfactorily served. Id.

Further, the Board stated that the contentions Mr. Waters raised "were not sufficient to warrant relief, given the seriousness of [his] misconduct which resulted in [his] relief for cause, NJP, and a punitive letter of reprimand based on a loss of trust and confidence, conduct unbecoming an officer, and disregard for the officer oath of office." Id. at 396. It found that his contention of unlawful command influence was without merit because the non-judicial punishment was supported legally and factually by the record. Id.

The Board also rejected Mr. Waters's argument regarding the Marine Corps's failure to follow the procedures set forth in SECNAVINST 1920.6C, agreeing with the Marine Corps that

---

[5] Lieutenant Colonel Schrock also observed that Mr. Waters's request was untimely because it was filed more than three years after his non-judicial punishment, but noted that the Board had authority to waive that defect. See AR Tab 15 at 980.

the provision on which Mr. Waters relied was not applicable to him. Id. (stating that Mr. Waters's "contention [was] based on policy not germane to [his] case"). And under the applicable provision, the Board also agreed with the advisory opinion that Lieutenant General Flynn had not "introduce[d] new matter" when he used the word "adulterous" in its colloquial rather than legal sense, and that Mr. Waters was already on notice of the facts supporting that usage—i.e., of the relationship's existence and the fact that he conducted it with a married woman. Id. at 396–97. Similarly, it determined that the use of the phrase "within his command" to describe the gunnery sergeant "was not [a] new matter" because "the phrase 'under his command' [was] used in an approved finding of fact." Id. at 397 (alteration omitted). Finally, the BCNR concluded that because Mr. Waters had admitted to conduct unbecoming an officer and a gentleman, the record did not support his contention that he should have been retired at the grade of lieutenant colonel. Id.

## V. This Action

On May 25, 2017, Mr. Waters filed a pro se complaint in this Court. Compl., Docket No. 1. He challenges the Board's refusal to correct his records to reflect retirement at the grade of lieutenant colonel on the ground that the Marine Corps violated Enclosure 6 to SECNAVINST 1920.6C. See id. ¶¶ 25, 39, 46, 68–70. As the Court reads his complaint, Mr. Waters primarily asserts that the Marine Corps violated paragraph 2 of the instruction by inserting new "factual material" into the record presented to the Secretary of the Navy with his retirement request without providing him with the opportunity to review and comment on the same. See id. ¶¶ 21, 68. He also attacks the Marine Corps's alleged failure to comply with the forwarding procedures and written notification and rebuttal requirements of paragraph 1 of the instruction. See id. ¶ 68. In light of these asserted flaws, he argues that the BCNR erred by failing to correct his records. Id. ¶ 71. Mr. Waters seeks correction of his records to reflect retirement at the grade of lieutenant colonel, expungement of "all correspondence related to the command investigation, NJP, and administrative separation," and $67,905.50, representing the difference between what he has received in retirement pay and what he would have received had he been retired at the rank of lieutenant colonel. See id.

The government filed the administrative record on August 24, 2017. Docket No. 8. Mr. Waters filed a motion to supplement the record on December 1, 2017. Docket No. 16. On May 3, 2018, the government filed a motion to dismiss pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims (RCFC), and in the alternative, a motion for judgment on the administrative record, as well as an opposition to Mr. Waters's motion to supplement the record. Docket No. 22. On June 4, 2018, Mr. Waters filed an opposition to the government's motion, and, giving his filing a liberal reading in light of his pro se status, a cross-motion for judgment on the administrative record. Docket No. 25.

## DISCUSSION

## I. Subject Matter Jurisdiction

Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or

implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a) (2012). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). A plaintiff, therefore, must establish that "a separate source of substantive law . . . creates the right to money damages." Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

Mr. Waters asserts that this Court has jurisdiction over his claims pursuant to the Military Pay Act, 37 U.S.C. § 204. Compl. at 2. But while that statute is money-mandating, Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006), Mr. Waters does not appear to be seeking reinstatement to the military, nor does he appear to be requesting an award of back pay based on a theory that the Marine Corps erred by removing him from active duty.

Instead, he is seeking an increase in his retirement benefits and a corresponding correction of his records. His claims are therefore based on 10 U.S.C. § 6323(e), under which an eligible Marine Corps officer is "entitled to retired pay," and on 10 U.S.C. § 1370, which requires that such an officer "be retired in the highest grade in which he served on active duty satisfactorily, as determined by the Secretary of the military department concerned, for not less than six months." The Court of Federal Claims "possesses jurisdiction over military retirement pay claims based not on the Military Pay Act, but on the applicable retirement pay statutes." Piotrowski v. United States, No. 13-760C, 2014 WL 7476033, at *8 (Fed. Cl. Dec. 30, 2014) (citing cases), aff'd, 722 F. App'x 982 (Fed. Cir. 2018) (per curiam); see also Lewis v. United States, 458 F.3d 1372, 1376 n.2 (Fed. Cir. 2006) (stating that "[r]etirement pay claims are brought under other money-mandating statutes" such as "10 U.S.C. §[] 6323"); Randolph v. United States, 179 Ct. Cl. 425, 426–33 (1967) (per curiam) (deciding on merits plaintiff's claim that he was wrongfully retired at a lesser grade); Roberts v. United States, 151 Ct. Cl. 360, 361–66 (1960) (deciding on summary judgment plaintiff's claim that he was retired at an incorrect, lesser grade).

Accordingly, the Court has Tucker Act jurisdiction over Mr. Waters's claims seeking a correction of his records to reflect retirement at the grade of lieutenant colonel, rather than major.

## II.    Motion to Dismiss

The government has filed a motion to dismiss Mr. Waters's claims to the extent that they are based on the Military Pay Act. As noted, this Court is of the view that the proper basis for its jurisdiction in this case lies in the military retirement statutes, not the Military Pay Act. But assuming that Mr. Waters is attempting to state a claim that arises under the Military Pay Act, the Court agrees with the government that he has failed to do so.

As both parties recognize, where a former service member seeks relief pursuant to the Military Pay Act, he or she must sufficiently allege (and ultimately demonstrate) that his or her discharge was involuntary. Metz, 466 F.3d at 999. Mr. Waters fails to do so.

As noted, Mr. Waters admits that he submitted a request to voluntarily retire to avoid facing a Board of Inquiry, which might have led to his involuntary separation for cause. He

submitted the request in consultation with counsel, and with the knowledge that it could only be withdrawn with the permission of the Secretary of the Navy. Compl. ¶¶ 24–25, 28–29. His request was ultimately granted.

Nevertheless, he argues that his retirement should not be considered voluntary. He first points to the email he sent to the Navy's General Counsel on the day before his retirement became effective. See Pl.'s Resp. to Def.'s Mot. to Dismiss, Alternative Mot. for J. on the Admin. R., & Opp'n to Pl.'s Mot. to Suppl. the Admin. R. (Pl.'s Resp.) at 35, Docket No. 25. In that email, Mr. Waters raised concerns about allegedly improper command influence and other "prejudicial activity" in the handling of his non-judicial punishment and asked for a delay in his retirement to allow him to present those concerns (which he had already raised with the inspector general) to the Secretary. See AR Tab 14 at 779–80.

But Mr. Waters's eleventh-hour request did not render his retirement involuntary. First, he did not actually ask that his retirement request be withdrawn or otherwise indicate he no longer wished to retire. Rather, he asked for an "emergency delay" of his retirement so that he could present the grievances he had put before the inspector general to the Secretary of the Navy. Id. at 780. Second, to the extent Mr. Waters was attempting to withdraw his voluntary retirement request, the attempt was ineffective because it was not made in compliance with the Navy's instruction that he pose any such request directly to the Secretary of the Navy—a restriction Mr. Waters explicitly acknowledged when he submitted his voluntary retirement request. See id. Tab 8 at 446; see also Def.'s Mot. Ex. A at 4 (Enclosure 6 to SECNAVINST 1920.6C, ¶ 2(a)(5)). Instead, Mr. Waters sent the email to the Navy's Office of General Counsel. See AR Tab 14 at 779–80. And finally, to the extent Mr. Waters can be deemed to have effectively sought to withdraw his retirement request, that effort does not affect the voluntary nature of the initial request, because the decision whether to grant the withdrawal lies solely within the discretion of the Secretary. Scarseth v. United States, 52 Fed. Cl. 458, 474–75 (2002).[6]

In sum, the Court has no basis upon which to conclude that Mr. Waters's voluntary retirement was somehow ineffective. The government's motion to dismiss any Military Pay Act causes of action for failure to state a claim is therefore **GRANTED**.

## III.   Cross-Motions for Judgment on the Administrative Record

### A.   Standard of Review

The Court of Federal Claims reviews decisions of military correction boards based upon the administrative record. Walls v. United States, 582 F.3d 1358, 1367 (Fed. Cir. 2009). Parties

---

[6] Mr. Waters also appears to argue that the voluntariness of his retirement request was vitiated by what he characterizes as misrepresentations in Lieutenant General Flynn's endorsement— namely, his statement that Mr. Waters had engaged in an "adulterous" relationship and that the relationship was with the wife of a service member who was "within his command." Pl.'s Resp. at 27. But that endorsement was not written until weeks after Mr. Waters requested retirement; it thus did not affect his decision to retire. Moreover, and in any event, as discussed in more detail below, the comments Lieutenant General Flynn made were not misrepresentations.

may move for judgment on the administrative record pursuant to RCFC 52.1. In deciding a motion pursuant to RCFC 52.1, the court makes "factual findings . . . from the record evidence as if it were conducting a trial on the record." Bannum, Inc. v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005). Thus, "resolution of a motion respecting the administrative record is akin to an expedited trial on the paper record, and the Court must make fact findings where necessary." Baird v. United States, 77 Fed. Cl. 114, 116 (2007). The Court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." A&D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006). Unlike a summary judgment proceeding, genuine issues of material fact will not foreclose judgment on the administrative record. Bannum, Inc., 404 F.3d at 1356.

The Court reviews the administrative record to determine whether a board's decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. See Chappell v. Wallace, 462 U.S. 296, 303 (1983) (noting that a decision of the Board for the Correction of Naval Records is "subject to judicial review" and may be set aside if it is "arbitrary, capricious or not based on substantial evidence"); Barnick v. United States, 591 F.3d 1372, 1377 (Fed. Cir. 2010). The scope of this judicial review is a deferential one. See Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). The arbitrary and capricious standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Id. at 1157 (emphasis in original). In determining whether the conclusion is supported by substantial evidence, "all of the competent evidence must be considered . . . and whether or not it supports the challenged conclusion." Id. (emphasis omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This Court may not "substitute [its] judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." Heisig, 719 F.2d at 1156 (footnote omitted).

### B.  Mr. Waters's Motion to Supplement the Administrative Record

As noted above, Mr. Waters has moved to supplement the administrative record. He primarily seeks to introduce documents that he received in response to FOIA requests he made after the Board issued its decision. These documents include, among others, materials related to the inspector general's investigation of alleged misconduct by the gunnery sergeant with whose wife he had an affair, news reports, photographs, a variety of government directives related to access to classified information, and internal Marine Corps documents. Mr. Waters argues that these documents should be admitted into the record to substantiate his allegations that the "the government, at multiple levels, engaged in selective ethics and prosecution, investigative misconduct, unlawful command influence, infringement of civilian privacy and rights, and wrongheaded endorsements." Mem. of P. & A. in Supp. of Pl. Mot. to Suppl. the Admin. R. at 1, Docket No. 16.

Mr. Waters's motion lacks merit. Judicial review of decisions of military correction boards is conducted "under the APA," and such review "is generally limited to the administrative record." Walls, 582 F.3d at 1367–68; see also Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (observing that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing

court" (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973))). Supplementation of the administrative record is proper only in those "cases in which 'the omission of extra-record evidence precludes effective judicial review.'" Axiom Res. Mgmt., Inc., 564 F.3d at 1380 (citing Murakami v. United States, 46 Fed. Cl. 731, 735 (2000)).

This is not such a case. Mr. Waters's retirement claims are based on alleged violations of the Navy's procedural rules. The administrative record contains Mr. Waters's entire military service record, the complete investigative report prepared by the Marine Corps, all endorsements of that report, the record of his non-judicial punishment, and all documentation relating to his request to retire. The record also contains the decision of the BCNR and the advisory opinion upon which it relied. These documents provide a satisfactory basis for the Court's review of Mr. Waters's challenge to the BCNR's decision.

Conversely, none of the documents Mr. Waters proffers are necessary for this Court's review. A number of the documents relate to extraneous issues such as Mr. Waters's allegations of criminal activity, invasions of privacy, and inappropriate relationships among other members of the Marine Corps. These matters, which were apparently referred to the inspector general for investigation, have no bearing on whether the Marine Corps followed SECNAVINST 1920.6C or whether the BCNR's decision was arbitrary and capricious.

Further, while Mr. Waters is correct that in some circumstances supplementation of the record is permissible to support a claim of bad faith, he alleges no hard facts to show that the actions he challenges in this case were infected by bias.[7] Thus, Mr. Waters's bias claims appear to be primarily based on an alleged close relationship between the gunnery sergeant and Colonel Henry, who oversaw the original investigation of Mr. Waters's affair with the gunnery sergeant's wife and who approved the investigating officer's recommendation that Mr. Waters be charged with a violation of the UCMJ. According to Mr. Waters, Colonel Henry had "served closely" with the gunnery sergeant "on at least two separate occasions" and had written him a positive recommendation that included "details of the pair's 15th Marine Expeditionary Unit operational exploits together." Pl.'s Resp. at 6.

These allegations, even if true, do not support a finding of bias sufficient to justify supplementation of the administrative record. There is no evidence that the investigation was tainted by any alleged regard that Colonel Henry had for the gunnery sergeant. In fact, Mr.

---

[7] The Court observes that because Mr. Waters did not appeal his non-judicial punishment and is not seeking damages in this Court for the loss of pay that resulted from that punishment, any claims that the non-judicial punishment proceedings were infected by bias are not before the Court. Cf. Cochran v. United States, 1 Cl. Ct. 759, 765–66 (1983) ("In a suit seeking to overturn nonjudicial punishment imposed under Article 15, this court's jurisdiction is limited to cases involving money claims founded on allegations of lack of compliance with the requirements of the statute, the controlling regulations and the Constitution."). Further, for the reasons set forth in the subsequent text, even if such allegations were relevant to the issues before the Court, Mr. Waters has not provided a sufficient justification for the Court to supplement the record with any evidence purporting to show bias during the investigation or during the non-judicial punishment process.

Waters twice admitted to the misconduct uncovered in the investigation, and it was that admitted misconduct that served as the basis for both his non-judicial punishment and the Secretary's decision to retire him at the rank of major. Further, Colonel Henry was not a decision-maker with respect to the actions about which Mr. Waters complains. His recommendation that the investigating officer's report be approved was reviewed by his superiors, who agreed that non-judicial punishment was appropriate based on the investigative record. It was Lieutenant General Flynn who imposed the non-judicial punishment based on the investigation and Mr. Waters's admission. Lieutenant General Flynn is also the officer who referred the matter to a Board of Inquiry and recommended that Mr. Waters be retired at the grade of major. And it was ultimately the Assistant Secretary of the Navy who accepted that recommendation.

In short, Mr. Waters has failed to supply hard facts or to explain how any alleged "bad faith" relates to the claims in his complaint, which are based on allegations that the Navy violated its procedural rules in processing his voluntary retirement request. Accordingly, Mr. Waters's motion to supplement the administrative record is **DENIED**.

## C.    Merits

As noted, Mr. Waters challenges the BCNR's decision on the grounds that his procedural rights were violated in connection with the decision that he be retired at the rank of major. First, he argues that the Navy violated paragraph 2(c) of Enclosure 6 to SECNAVINST 1920.6C by failing to give him an opportunity to respond to Lieutenant General Flynn's endorsement, which he claims added new factual material to his retirement package. Second, he argues that the Marine Corps failed to follow the notification and forwarding requirements of paragraph 1(c)(1) of the same instruction. These arguments lack merit.

### 1.    Alleged Violation of Paragraph 2(c)

First, the Court rejects Mr. Waters's argument that the Marine Corps violated his rights under paragraph 2 of Enclosure 6 to SECNAVINST 1920.6C. Paragraph 2(a) of the instruction states that "[a]ny officer being considered for administrative show cause proceedings per this instruction who is eligible for voluntary retirement under any provision of law may request voluntary retirement." See Def.'s Mot. Ex. A at 4. Subsection (a) of this paragraph states that the voluntary retirement request must include certain information, including "[a] statement that the officer understands that a BOI will not be convened" and "[a] statement that the officer admits that his or her performance of duty was substandard, and[,] if the officer is being required to show cause for misconduct, that he or she admits committing the misconduct." Id. Pursuant to subsection (b), "[t]he request shall also include a copy of the investigation or other documentation pertaining to the misconduct." Id. Finally, and most pertinent here, subsection (c) states that "[t]he request shall be forwarded with appropriate command endorsements" and that "[a]ny new factual material shall be provided to the officer for review and comment." Id. at 4–5. (emphasis supplied).

Mr. Waters does not dispute that he was "being considered for administrative show cause proceedings"—i.e., a Board of Inquiry—at the time he requested a voluntary retirement, and that his request was therefore subject to the procedures in paragraph 2. According to Mr. Waters, the Navy violated the procedures of paragraph 2 when it did not give him the opportunity to review

and comment on what he alleges was "new factual material" contained in Lieutenant General Flynn's endorsement. Specifically, he cites the lieutenant general's characterization of Mr. Waters's relationship with the gunnery sergeant's wife as "adulterous" and his assertion that the gunnery sergeant was "within [Mr. Waters's] command." See Pl.'s Resp. at 18–20. Mr. Waters contends that using the word "adulterous" "aggravate[d] the original nature of the [non-judicial punishment] charge," given that the investigating officer had found that there was not sufficient evidence to charge him with the offense of "adultery" under the UCMJ. Id. at 28. He further contends that the formal charge in the non-judicial punishment phase of the case did not reference the fact that the gunnery sergeant was under his command. See id. at 20. These arguments lack merit.

First, contrary to Mr. Waters's arguments, Lieutenant General Flynn's statement that Mr. Waters had engaged in an "adulterous relationship" did not add new factual material to the record; nor did it suggest that Mr. Waters had admitted to the offense of "adultery" as defined by the UCMJ. The word "adulterous" is the adjectival form of the word "adultery," which is defined in common parlance as "[v]oluntary sexual intercourse between a married person and someone other than the person's spouse." Adultery, Black's Law Dictionary (10th ed. 2014). Here, the investigation determined (and Mr. Waters in fact admitted) that he had a sexual relationship while married with another person's wife; thus, he was party to an adulterous relationship. Moreover, it was clear from the investigative package that the charge against Mr. Waters was "conduct unbecoming an officer and a gentleman" and not adultery; the use of the phrase "adulterous relationship" accordingly was not misleading.

Second, and likewise, describing the gunnery sergeant as within Mr. Waters's command was not a new fact. At his non-judicial punishment hearing, Mr. Waters was asked by Lieutenant General Flynn whether he "admit[ted] that . . . [he] had an inappropriate relationship with [the] wife of a Gunnery Sergeant who was [his] subordinate." AR Tab 5 at 435. Mr. Waters stated "[y]es, sir." Id. As the gunnery sergeant was Mr. Waters's subordinate, he was within Mr. Waters's command. See Subordinate, Black's Law Dictionary (10th ed. 2014) (definition including "[s]ubject to another's authority or control").

In short, Lieutenant General Flynn's endorsement contained nothing more than an accurate description of the known facts of the case. The Marine Corps therefore was not required by paragraph 2(c) of its instruction to give Mr. Waters an opportunity to respond to the endorsement because it did not include new factual information.

## 2.    Alleged Violation of Paragraph 1(c)

As noted, Mr. Waters also claims that the Marine Corps failed to follow the notification and forwarding requirements of paragraph 1 of the instruction. Subsection (c) of paragraph 1 states that "[a]ll voluntary retirement requests from officers who have been the subject of any substantiated adverse finding or conclusion from an officially documented investigation or inquiry . . . shall be forwarded to SECNAV for a retirement grade determination." Def.'s Mot. Ex. A at 2. Subsection (c)(1) further states that before the voluntary retirement request is forwarded, the officer shall be notified in writing: 1) that the request is being forwarded for a retirement grade determination; 2) of "[t]he factual basis supporting the substantiated adverse finding or conclusion from the officially documented investigation or inquiry"; 3) of the

recommended retirement grade; and 4) "[t]hat the officer may submit a rebuttal or decline to make a statement." Id. at 3.

According to the government, Mr. Waters was not afforded the specified rights because he was not covered by the procedures set forth in paragraph 1(c)(1). See Def.'s Mot. at 22. It contends that Mr. Waters's procedural rights were prescribed exclusively by paragraph 2 because, at the time of his request, he was "being considered for administrative show cause proceedings."

The language of the instruction is less than crystal clear. As explained above, Mr. Waters was clearly entitled to the procedural rights set forth in paragraph 2, because at the time of his request he was an "officer being considered for administrative show cause proceedings . . . who [was] eligible for voluntary retirement under any provision of law." Id. Ex. A at 4. Yet it also appears that he was within the category of officers who are described in paragraph 1(c)(1), which covers "[a]ll voluntary retirement requests from officers who have been the subject of any substantiated adverse finding or conclusion from an officially documented investigation or inquiry." Id. at 3.

Nonetheless, the notion that Mr. Waters's request was subject to both sets of procedural requirements cannot be correct because the two sets of requirements are mutually inconsistent in a number of respects. For example, paragraph 2(a)(4) requires an officer seeking approval of his voluntary retirement to admit that his performance was substandard or that he committed misconduct. Id. at 4. On the other hand, paragraph 1(c)(1)(d) affords the officer the right to submit a rebuttal or decline to make a statement in response to the substantiated adverse finding or conclusion. Id. at 3. Similarly, paragraph 1(c)(1)(b) requires the Navy to provide the officer with the factual basis for the adverse finding or conclusion, id., while paragraph 2(b) places the burden on the officer to provide a copy of the investigative report or other documentation of misconduct, id. at 4.

Further, language in the opening portion of paragraph 1 strongly suggests that these provisions set forth alternative procedures. See id. at 1. Thus, paragraph 1 states at the outset that the determination of the last grade in which the officer served satisfactorily will be made by the Secretary of the Navy without a Board of Inquiry "in those cases, forwarded per paragraph 1c or 2 of this enclosure, where the officer[] h[as] submitted [a] voluntary retirement request[]." Id. (emphasis supplied).

Even assuming that the text of the instruction is ambiguous, in ordinary circumstances (such as these) the agency's interpretation of its own rules is "controlling unless 'plainly erroneous or inconsistent with the regulation.'" See Auer v. Robbins, 519 U.S. 452, 461 (1997) (quoting Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359 (1989)); see also Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); Gose v. U.S. Postal Serv., 451 F.3d 831, 837 (Fed. Cir. 2006) (in the ordinary case, the court "defer[s] even more broadly to an agency's interpretation[] of its own regulations than to its interpretation of statutes, because the agency, as the promulgator of the regulation, is particularly well suited to speak to its original intent in adopting the regulation"); Wronke v. Marsh 787 F.2d 1569, 1576 (Fed. Cir. 1986) (holding that Army's interpretation of its own procedural rules is entitled to great deference). The Navy's interpretation of the instruction here, as noted above, is that it provides two separate

sets of procedures for certain officers who seek approval to retire voluntarily. See AR Tab 15 at 982 (Lieutenant Colonel Schrock's advisory opinion setting forth this view). One set of procedural rights (set forth at paragraph 2) applies where an officer is being considered for proceedings before a Board of Inquiry (as was Mr. Waters) and another (at paragraph 1(c)) applies where there has been a substantiated adverse finding or conclusion from an official investigation or inquiry but show cause proceedings have not been instituted. See id.

This interpretation is neither plainly erroneous nor inconsistent with the text. Therefore, in light of the text of the instruction and the Navy's interpretation, the Court concludes that only paragraph 2 of Enclosure 6 to SECNAVINST 1920.6C applied to Mr. Waters's voluntary retirement request, and not paragraph 1. As a result, he was not entitled to the additional procedures upon which his second challenge to the Board's decision relies.

## CONCLUSION

For the reasons set forth above, the government's motion to dismiss is **GRANTED-IN-PART**, and any claims under the Military Pay Act are **DISMISSED** with prejudice for failure to state a claim. As to Mr. Waters's remaining claims under the military retirement statutes, the government's motion for judgment on the administrative record is **GRANTED**. Mr. Waters's motion to supplement the administrative record is **DENIED** and his motion for judgment on the administrative record is **DENIED**. The Clerk is directed to enter judgment accordingly. Each side shall bear its own costs.

**IT IS SO ORDERED.**

_____
ELAINE D. KAPLAN
Judge